**T.I.M.E.–D C, INC., Plaintiff,**

v.

**I.A.M. NATIONAL PENSION FUND, Defendant.**

**Civ. A. No. 84–3068.**

United States District Court, District of Columbia.

Aug. 6, 1985.

Carl L. Taylor, Kirkland & Ellis, Washington, D.C., for plaintiff.

Robert R. Osgood, Washington, D.C., for defendant.

## MEMORANDUM OPINION

THOMAS F. HOGAN, District Judge.

T.I.M.E.–D C, Inc. filed the complaint in this action against the defendant I.A.M. National Pension Fund (the "Machinists' Fund"/the "Fund"), as the result of the defendant's September 14, 1984 assessment of "withdrawal liability" against the plaintiff under the terms of the Multiemployer Pension Plans Amendment Act of 1980 (the "Multiemployer Act"/the "MPPAA"), 29 U.S.C. §§ 1002(37)(A); 1301(a)(3) (1983). Specifically, the complaint as originally framed, sought a declaration that T.I.M. E.–D C, Inc. ("TIME–DC"/"TIME") is involved in an on-going labor dispute with the International Association of Machinists and Aerospace Workers (the "Machinists"/the "Union"), excepting TIME from withdrawal liability under the "labor dis-

putes" provision of the Multiemployer Act, 29 U.S.C. § 1383(a). The complaint also sought an injunction enjoining the Fund from prosecuting, enforcing, or collecting any claim for withdrawal liability against TIME.

The defendant Machinists Fund counterclaimed for declaratory relief, seeking a declaration that its claim for withdrawal liability was not barred by the MPPAA labor disputes exception on the basis that there was no on-going labor dispute between TIME and the Union, as well as a declaration that TIME could initially challenge the withdrawal assessment only through the MPPAA's arbitration procedures.

By Memorandum Opinion and Order of November 6, 1984, 597 F.Supp. 256, this Court granted plaintiff's motion for a preliminary injunction insofar as enjoining the defendant from pursuing its September 14, 1984 claim of withdrawal liability against TIME–DC. In doing so, the Court held that the September 14, 1984 claim, assessing withdrawal liability as of March and April, 1982, was improper given the clear existence of a labor dispute between TIME and the Union during March and April of 1982. However, the Court reached no determination as to whether the labor dispute is on-going, but instead indicated only that the Fund, in assessing withdrawal liability against TIME, had not to date properly investigated the status of the labor dispute.

On January 16, 1985 a consent permanent injunction was entered with respect to the Fund's September 14, 1984 claim, embodying the same terms as the preliminary injunction. Presently before the Court are several motions, filed both prior to and after entry of the consent permanent injunction, raising questions as to what remains of this action in light of the permanent injunction.

### I.

▮ First, prior to entry of the consent permanent injunction plaintiff filed a motion to amend the complaint. Unlike the original complaint, which simply set forth the claims for declaratory and injunctive relief without enumeration of counts, the amended complaint seeks to designate plaintiff's claims for injunctive and declaratory relief as to defendant's September 14, 1984 assessment of withdrawal liability "Count One," while designating as "Count Two" plaintiff's claims for declaratory and injunctive relief based on the allegation of a presently continuing labor dispute between itself and the Union. Although the proposed amended complaint more clearly delineates plaintiff's claims, and is in conformity with this Court's perception of the pertinent issues of this case as identified in the treatment of plaintiff's preliminary injunction motion, the amended complaint merely restructures the allegations of the original complaint without adding any new claims or issues. Accordingly, formal amendment of the complaint is not warranted.

### II.

Likewise, prior to the entry of the consent permanent injunction plaintiff sought partial summary judgment with respect to defendant's September 14, 1984 assessment of withdrawal liability. With the filing of the consent permanent injunction plaintiff instead requested that its summary judgment motion be treated as a motion for entry of judgment in its favor pursuant to Rule 58 of the Federal Rules of Civil Procedure. The permanent injunction consented to by the parties has already been approved by the Court and incorporated in its order of January 16, 1985, and therefore is an order which the Court retains jurisdiction to enforce. No further action by this Court with respect to the September 14, 1984 withdrawal liability claim is necessitated.

### III.

▮ Defendant has also filed a motion with this Court to dismiss its counterclaim. Plaintiff opposes that motion unless the dismissal is with prejudice, precluding the Fund from later asserting that the labor dispute between TIME and the Machinists

ended prior to October 25, 1984, the date of the filing of the counterclaim. In seeking dismissal with prejudice plaintiff merely argues that dismissal without prejudice would solve nothing at this point of the litigation. Defendant indicates on the other hand, that while it does not desire at this time to contest plaintiff's assertion that there is an on-going labor dispute, it does not wish to concede that point either, but instead wishes to reserve its right at some future time to assert, based on evidence that it may obtain in the future, that the labor dispute ended, and perhaps ended prior to October 25, 1984. This Court must agree that defendant's assertion that it does not at this time contest the plaintiff's position that a labor dispute is presently on-going should not be held against it as a binding concession. The defendant's representation that it wishes only to re-evaluate any evidence of the situation that should come into its possession is precisely what this Court in ruling on the preliminary injunction motion indicated was the Fund's proper role under the MPPAA. Accordingly, this Court does not find any compelling reasons why dismissal of defendant's counterclaim without prejudice should not be permitted.

## IV.

■ Given the entry of a consent permanent injunction as to the defendant's September 14, 1985 withdrawal liability assessment and the dismissal of defendant's counterclaim, this Court finds that plaintiff's complaint does not present any further case or controversy appropriate for review by this Court. Plaintiff's claim for a declaration that the labor dispute between itself and the Machinists is still on-going, as well as the claim for an injunction precluding the defendant from seeking to enforce or collect any claim of withdrawal liability until that labor dispute ends, simply are not ripe for review in the absence of any further assertion of withdrawal liability by the Fund.

The ripeness doctrine considers whether the "conflicting contentions of the parties ... present a real, substantial controversy between the parties having adverse legal interests, a dispute definite and concrete, not hypothetical or concrete." *Railway Mail Assn. v. Corsi*, 326 U.S. 88, 93, 65 S.Ct. 1483, 1487, 89 L.Ed. 2072 (1945). The ripeness doctrine therefore requires the Court to evaluate "both the fitness of the issues for judicial decision and the hardship to the parties of withholding consideration." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). In doing so, the Court must consider the reality and imminence of injury to the plaintiff. *KVUE, Inc. v. Austin Broadcasting Corp.*, 709 F.2d 922, 927 (5th Cir.1983). A matter is not ripe for adjudication absent "the threat of significant and immediate impact on the plaintiff." *Kerr-McGee Chemical Corp. v. Dept. of the Interior*, 709 F.2d 597, 600 (9th Cir.1983) (citing *Toilet Goods Ass'n v. Gardner*, 387 U.S. 158, 162–64, 87 S.Ct. 1520, 1523–24, 18 L.Ed.2d 697 (1967) ).

In the absence of any pending claim for withdrawal liability the plaintiff is not threatened with sufficiently imminent injury to constitute a cognizable case or controversy—a Constitutional prerequisite for jurisdiction. To hold that this Court has jurisdiction to simply determine in the abstract whether a labor dispute is still on-going between TIME and the Machinists, and whether withdrawal liability may be asserted against TIME, would give this Court a function which the MPPAA intended to be performed in the first instance by the Fund. Moreover, to accept the plaintiff's position would place this Court in a continuing role as an overseer of the relationship between TIME, the Machinists and the Fund, free simply to review from time to time, at a party's request, whether the labor dispute was continuing at that particular time. This is a role clearly inappropriate under the Constitution's "case and controversy" requirement of federal jurisdiction. Accordingly, all claims by the plaintiff not covered by the January 16, 1985 consent permanent injunction must be dismissed for lack of jurisdiction.

## V.

■ Therefore, the only remaining matter pending before this Court is plaintiff's motion for attorneys fees and costs.[1]

With respect to attorneys fees the MPPAA provides that "the court may award all or a part of the expenses incurred ..., including reasonable attorneys fees, to the prevailing party." 29 U.S.C. § 1451(e). TIME–DC has moved the Court to enter an order awarding it costs and reasonable attorneys fees under section 1451(e) as the "prevailing party" on the issue of the Fund's September 14, 1984 withdrawal liability assessment. In doing so, the plaintiff asserts that the Supreme Court's decision in *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), interpreting the Civil Rights Attorneys Fees Awards Act of 1976, 42 U.S.C. § 1988, sets the standard "generally applicable to all cases in which Congress has authorized an award of fees to a 'prevailing party'." *Id.* at 433 n. 7, 103 S.Ct. at 1939 n. 7. Therefore, plaintiff maintains, under *Hensley* the prevailing party "should ordinarily recover an attorneys fee unless special circumstances would render such an award unjust." *Id.* at 429, 103 S.Ct. at 1937.

The defendant asserts, however, that *Hensley*'s applicability to other statutes providing for an award of attorneys fees to the prevailing party is limited to *Hensley*'s instruction of *how* to calculate a reasonable award. In determining *when* an award of fees is appropriate, the defendant argues, instruction is more properly taken from cases construing the civil enforcement section of the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(g)(1), which like the MPPAA provision is specifically applicable to pension plans, than from *Hensley* and other cases

considering awards of attorneys fees under the unique concerns of the civil rights statutes. *See Shelter Framing Corp. v. Pension Benefit Guaranty Corp.*, 705 F.2d 1502, 1515 (9th Cir.1983), (citing ERISA fee award principles as applicable to MPPAA)[2], *rev'd on other grounds sub nom., Pension Benefit Guaranty Corp. v. R.A. Gray & Co.*, — U.S. ——, 104 S.Ct. 2709, 81 L.Ed.2d 601 (1984); *see also Terson Co., Inc. v. Bakery Drivers & Salesmen Local 194*, C.A. 82–4058, Mem.Op. (D.N.J. October 29, 1984) (applying ERISA fee award principles to MPPAA).

Cases awarding attorneys fees against pension plans under ERISA have generally focused on five factors in considering whether an award of fees is appropriate: (1) the losing party's culpability or bad faith; (2) the losing party's ability to satisfy a fee award; (3) the deterrent effect of such an award; (4) the value of the victory to plan participants and beneficiaries, and the significance of the issue involved, and (5) the relative merits of the parties' positions. *Hummell v. S.E. Rykoff & Co.*, 634 F.2d 446, 453 (9th Cir.1980); *see also Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255, 1266 (5th Cir.1980); *Eaves v. Penn*, 587 F.2d 453, 465 (10th Cir.1978).

This Court need not determine whether the *Hensley* or *Hummell* standard is specifically applicable to attorneys fees awards under the MPPAA. Instead, this Court finds that even under the more restrictive standard of *Hummell*, an award of attorneys fees to TIME–DC is nevertheless appropriate in this case.

"No one of the *Hummell* factors ... is necessarily decisive, and some may not be pertinent in a given case." *Carpenters Southern California Administrative Corp. v. Russell*, 726 F.2d 1410, 1416 (9th Cir.1984). The defendant, in seeking to

---

1. Plaintiff had also filed a motion to compel discovery. The matters sought to be discovered, however, were revealed in defendant's response to that motion, with plaintiff noting no dissatisfaction with the response given. Accordingly, plaintiff's motion to compel is moot.

2. In *Shelter Framing* the Court of Appeals upheld an award of attorneys fees to plaintiffs who had successfully challenged the MPPAA's constitutionality. *Pension Benefit Guaranty Corp.* subsequently overruled the underlying decision which had made the plaintiff's prevailing parties, sustaining the MPPAA's constitutionality. 104 S.Ct. at 2717–20.

avoid an award of attorneys fees in this case under *Hummell,* argues only that it did not act in bad faith in assessing withdrawal liability against TIME, and that this case did not resolve issues of broad legal significance.

It is not necessary to find that the Fund acted in bad faith to award attorneys fees under *Hummell.* Instead, while the existence of bad faith may be a compelling factor, *requiring* bad faith under § 1451(e), or any other statutory provision for attorneys fees, would render the statute virtually meaningless since "if the objective of Congress had been to permit the award of attorneys fees only against defendants who had acted in bad faith 'no new statutory provision would have been necessary' since even the American common law rule allows the award of attorneys fees in those exceptional circumstances." *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 417, 98 S.Ct. 694, 698, 54 L.Ed.2d 648 (1978); *see also Smith v. CMTA–IAM Pension Trust,* 654 F.2d 650 (9th Cir.1984).

This Court's ruling on the preliminary injunction, which served as the basis for the consent permanent injunction, found that the defendant "completely failed to give proper consideration to the labor disputes exception to withdrawal liability" adopting "the paradoxical argument that a labor dispute in fact existed, but that the labor disputes exception . . . is nevertheless wholly inapplicable to the case hand." Memorandum Opinion, at 15 (November 6, 1984). The Court further noted that the record contained various inconsistent explanations for the defendant's conduct, *id.* at 10–11, but that none of the explanations overcame the lack of any evidence considered by the Fund indicating that the labor dispute had ended or that the Machinists had "walked away from the shop," abandoning the labor dispute. *Id.* at 17.

Regardless of the presence or absence of bad faith, therefore, this Court finds that the Fund's actions with respect to the September 14, 1984 assessment of withdrawal liability were both inconsistent and irrational, and that the failure to exercise its powers under the MPPAA responsibly, especially in light of the irreparable injury that the exercise of those powers may have, constitutes culpable conduct under *Hummell* warranting an award of attorneys fees to the plaintiff.

Likewise, regardless of the significance of the issues raised by this case, this Court finds that an award of attorneys fees to the plaintiff here may serve a deterrent effect, impressing upon this defendant and other pension funds the importance of responsibly exercising the statutory powers endowed upon them, especially in light of the impact that the exercise of those powers may have on their target.

The parties shall have 30 days in which to reach an agreement as to a reasonable sum of attorneys fees, after which time, in the absence of agreement, the plaintiff may file an appropriately documented petition for a judicial determination of the award.